**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KITTY L. LAMPP,

       Plaintiff,

vs.                                 CASE NO.  3:07-cv-93-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #15, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #19, D's Brief).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated March 23,, 2007 (Doc. #7).  The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **REVERSED and the case is remanded for further proceedings**.

## I. Procedural History

In the instant action, Plaintiff filed an application for a period of disability and disability insurance benefits on July 8, 2003 (Tr. 93-96).  Plaintiff alleged an onset of disability on April 7, 2003 (Tr. 93).  Plaintiff alleged she was unable to work due to pain in her arms, hands, joints, elbow, foot, shoulder and back;  limited usage of left arm; strong medications that cause her to feel disoriented and tired; difficulty concentrating due to medications and pain; depression and fatigue (Tr. 109-10; 136).

After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on March 30, 2006 in Jacksonville, Florida before administrative law judge (ALJ) John D. Thompson, Jr. (Tr. 483-536).  Plaintiff appeared and testified at the hearing, as did  vocational expert (VE) Melissa Howell.  Plaintiff was represented by attorney Michael Rudolph at the administrative hearing.  On August 15, 2006, ALJ Thompson issued a hearing decision denying Plaintiff's claim (Tr. 9-19).  The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 5-7).

The instant complaint was filed in federal court on February 12, 2007 (Doc. #1) by Plaintiff's current counsel of record, Mr. William E. Horne, Jr., Esq.   The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## II. Social Security Act Eligibility
## and the Standard of Review

Plaintiff is entitled to disability benefits when she is unable to engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 404.1505.[1]  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 127, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but may be less than a preponderance - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*,

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2007 edition.

932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

### III. Analysis

Plaintiff Kitty L. Lamp was born on June 10, 1948 (Tr. 93). Thus, she was fifty-seven (57) years old when the ALJ issued his decision. The record reveals Plaintiff completed high school, but has no further formal education (Tr. 142, 487). She has a past relevant work history as an administrative clerk, general clerk and cashier-checker (Tr. 143).

Plaintiff raises two issues on appeal. First, Plaintiff asserts the ALJ failed to properly evaluate all of the severe impairments and treating evidence during the time from April 7, 2003 through January 18, 2006 (P's Brief at 1, 7-15). Second, Plaintiff claims the Commissioner failed to evaluate the relevant and substantial evidence within the framework of the applicable legal standards (P's Brief at 1, 16-20). Stated another way, in more general terms, Plaintiff alleges the ALJ's findings are not supported by substantial evidence

4

and the ALJ failed to correctly apply the relevant law in making his decision to deny her application for disability benefits.   In this regard, Plaintiff specifically claims the "deficient analysis of the medical evidence fostered an insubstantial representation of her impairments, pain and functional limitations" (P's Brief at 5).

The Commissioner argues the ALJ's decision is supported by substantial evidence and was decided by the proper legal standards.   More specifically, the Commissioner asserts the ALJ correctly evaluated Plaintiff's RSDS[2] under SSR 03-02p and in accordance with the Regulations (D's Brief at 8).   The Commissioner further declares the ALJ's evaluation of Plaintiff's subjective complaints properly complied with the Regulations and Eleventh Circuit case law, as did the ALJ's analysis of the treatment records from Plaintiff's treating physician, Dr. Dennis George, M.D. (D's Brief at 10-12).

The Court, however, finds the Commissioner's argument ignores the obvious flaws in the ALJ's decision and such flaws require the case be remanded for reconsideration. Specifically, the Court's independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239,  reveals the ALJ has misquoted or misconstrued the record evidence on numerous points when making his findings of fact.   Thus, the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is not supported by substantial evidence.   Even if the record contained substantial evidence favorable to the Commissioner, that "may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal

---

[2]RSDS is the acronym for Reflex Sympathetic Dystrophy Syndrome, also abbreviated as RSD, and also known as Complex Regional Pain Syndrome Type I (CRPS). *See* SSR 03-2p, 2003 WL 22399117 (SSA 2003).

conclusions reached." *Russ v. Barnhart*, 363 F.Supp. 2d 1345, 1347 (M.D. Fla. 2005).
Such is the case in this matter.

## The ALJ's Misstatement of the Record and Misapplication of the Law

### *The ALJ's Determination of Plaintiff's Credibility*

The ALJ's flawed findings are most noticeable in his evaluation of Plaintiff's
testimony.  In this case, pain is a common component found in each of Plaintiff's severe
impairments.  Plaintiff attempted to establish her disability, at least in part, through her
testimony concerning the severity and duration of the pain, as well as the limiting effects
caused directly by the pain and caused indirectly by the side effects of the medications she
takes for the pain (Tr. 492-520).   The ALJ found Plaintiff's "medically determinable
impairments could be reasonably expected to produce some of the alleged symptoms," but
Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her
alleged symptoms were "not entirely credible" (Tr. 15).

At Step Two of the sequential evaluation process, the ALJ found Plaintiff had the
severe impairments of: (1) a history of reflex sympathetic dystrophy syndrome (RSDS);[3]
(2) a history of left shoulder pain due to an impingement syndrome and adhesive capsulitis;
(3) a history of cervical spine degenerative disc disease with herniated nucleus pulposus
(HNP) at C-5/C-7 with EMG and nerve conduction velocities showing C-5/C-6

---

[3]Reflex sympathetic dystrophy-A syndrome of pain and tenderness, usually to a
hand or foot, associated with vasomotor instability, skin changes and rapid development
of bony demineralization (osteoporosis); frequently will follow a localized trauma, stroke or
peripheral nerve injury.   *The Online Medical Dictionary*, available at
http://www.medilexicon.com/searches/medterms.php (last visited March 28, 2008).

radiculopathy;[4] and, (4) a history of pain disorder due to general medical condition (Tr. 13). Pain is the common component in each of these severe impairments.

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. 404.1529.  When a claimant attempts to establish disability through her own testimony of subjective pain symptoms, the ALJ must apply the Eleventh Circuit's three-part pain standard:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition _or_ (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

_Foote v. Chater_, 67 F.3d at 1560 _(quoting Holt v. Sullivan_, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added)).

Once both prongs of the pain standard are satisfied, "_all_ evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms _must_ be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  _Foote v. Chater_, 67 F.3d at 1561 (emphasis added) (citing 20 C.F.R. § 404.1529).  Thus, at this stage the ALJ must consider a claimant's subjective testimony of

---

[4]Radiculopathy-A herniated intervertebral disk (nucleus pulposus) is one which has become displaced (prolapsed) from its normal position between the vertebral bodies of the spine; such disks often impinge on nearby nerve structures resulting in pain and neurologic symptoms; a clinical situation where the radicular nerve (nerve root) is compressed by the prolapsed disk is referred to as a radiculopathy; this problem tends to occur most commonly in the cervical and lumbar spine. _The Online Medical Dictionary_, available at http://www.medilexicon.com/searches/medterms.php (last visited March 26, 2008).

pain.  *Id.* at 1560.  Furthermore, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques... must be considered in reaching a conclusion as to whether the individual is under a disability.  42 U.S.C.A. § 423(d)(5)(A).  Moreover, pain testimony is more credible when evidence indicates that the claimant's condition could reasonably be expected to cause pain; claimant consistently complained of pain; and claimant's daily activities have been significantly affected by pain. *Foote v. Chater*, 67 F.3d at 1560-62 (citations omitted); *see also Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Thus, a determination as to pain can only be reached by looking at the entire record, including both objective and subjective evidence.

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote,* 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).  Despite this deferential standard, it is essential that the reviewing court scrutinize the record in its entirety to determine the *reasonableness* of the decision reached by the ALJ. *Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987) (emphasis added) (internal citation omitted).  A reviewing court must be able to determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the regulations as construed by this circuit; otherwise, the reviewing court cannot effectively perform its duty. *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).  The function of the reviewing court is to "'ensure that the decision [of the ALJ] was...carefully considered in light of *all the relevant facts*.'"  *Id.* at 590 (emphasis added) (citation omitted).   In this case, the ALJ clearly articulated his credibility finding, but the reasons he found for

discounting Plaintiff's statements are not supported by substantial evidence.

First, the ALJ  acknowledged Plaintiff testified that she had back problems, but he found "the medical evidence of record reflects no complaints of back pain and no treatment for pack problems in the past three years" (Tr. 15).   However, the Court's independent review of the record revealed it is replete with references to back pain.  Perhaps most telling is the Disability Report-Adult, completed by Plaintiff on July 8, 2003,  the same date as her application for disability benefits (Tr. 109-43).[5]   Plaintiff clearly states, "I have pain all the time in my arms, hands, joints and back" (Tr. 109).   Plaintiff also lists "sore arm, hands, elbow foot, shoulder and back" among the conditions that limit her ability to work (Tr. 109, 136).   Numerous medical records show Plaintiff complained of back pain to her doctors (*see, e.g*., Tr. 212, 268, 275, 473, 408 475, 507-08) through at least 2005.  Furthermore, there are diagnoses in the record that correspond with back, as opposed to neck or shoulder, pain (*see, e.g*., Tr. 224-- MRI finding of left paracentral disk herniation at T1-T2- July 1, 2003; Tr. 406, 408, 410, 412, 414, 416, 417, 419, 421, 422, 471, etc.-- lumbar degenerative disc disease, muscle spasm, lumbar spondylosis- spanning February 2004 through December 2005).   As Plaintiff noted during the hearing, the Duragesic patch is a pain medication for the back, as well as shoulder and other areas (Tr. 508).

Second, the ALJ noted Plaintiff complained of problems sleeping, "but there is no evidence in the record to support these allegations either" (Tr. 15, 516-17).   Again this is an erroneous finding.  On April 2, 2003, Plaintiff presented to Dr. Fady El-Bahri, M.D., with

---

[5]The record reflects Plaintiff started to complete an online disability report on June 1, 2003 (Tr. 109).  The internet version of the report was partially completed and then closed on July 8, 2003 (Tr. 110-33).  The hard copy Disability Report-Adult (Form SSA-3368-BK) was completed and signed by Plaintiff on July 8, 2003 (Tr. 135-44).

complaints of "pain is described as constant, shooting, sharp, intense, occurring at night with inability to sleep" (Tr. 209).   On May 16, 2003, Plaintiff was seen by physician's assistant Thomas C. Drake and Dr. Orlando G. Florete, Jr, M.D. at the Institute of Pain Management, P.A. (Tr. 268-73).  Plaintiff complained not only of severe back and shoulder pain, as well as neck pain issues, she also complained of side effects from the numerous medications she was taking and of "fitful sleep" where she had trouble falling asleep, staying asleep and pain awakened her (Tr. 268-71).

Third, the ALJ noted that there is reference in the file indicating the claimant was sent for a functional capacities evaluation (FCE), but the results of the evaluation were "nowhere to be found in the file" (Tr. 15).  The ALJ uses this supposedly missing evidence to find the "claimant's credibility is called into question by these curious circumstances, particularly since she testified at the hearing that she did remember the FCE." (Tr. 15.)  The medical source document in the file, to which the ALJ refers, is Exhibit 7F/12 (Tr. 251).  On July 3, 2003, Dr. Jawed Hussain, M.D.,[6] entitled his office notes "Follow-up, Disability, and Functional Report" (Tr. 251).  The language to which the ALJ refers states,

> Ms. Kitty Lamp is a very pleasant 55-year-old female who is undergoing chronic pain management at the Institute of Pain Management. The patient was referred for a functional capacity evaluation, as the patient has applied for Social Security.  The patient was seen and evaluated.  Her functional limitations were evaluated.

(Tr. 251).  The only other notations that date refer to diagnoses/problems.  The June 12, 2003 record from the Institute of Pain Management notes, "The patient is undergoing

---

[6]Dr. Hussain is one of the physicians associated with the Institute of Pain Management, P.A., to which Plaintiff was referred on May 16, 2003 for pain management after being overly medicated (Tr. 251, 268-73).

evaluation by another physician.  Both shoulders were operated on.  The patient is looking to go on disability, and she will see Dr. Hussain for a physical capacity evaluation." (Tr. 261.)  On May 30, 2003, Plaintiff and her spouse sent a letter to the Institute of Pain Management stating Plaintiff was attempting to obtain a "medical retirement" from her government position with the Mayport NAS Housing office and requesting a doctor with the Institute complete the attached Physicians Statement that accompanied the request for "immediate medical disability retirement" (Tr. 263-64).  The document that is contained within the underlying record in this case is a five page document, "Certification of Health Care Provider," completed by Dr. Hussain on June 26, 2003 in which responses to questions concerning the health/medical condition of the patient are recorded (Tr. 256-260, *see also* Tr. 262).

The ALJ began his quest to locate a functional capacities evaluation of Plaintiff during his questioning of her at the administrative hearing.  He starts his reference by asking Plaintiff's attorney where is the FCE (Tr. 506).  The attorney responded he did not have the FCE, to which the ALJ replied he wanted to see it and would hold open the record "so I can get that" (Tr. 506).  The ALJ made a remark mentioning Dr. Hussain, to which Plaintiff interjected, "Oh, I know what that is....Sir, I remember that test. Can I tell you how it went or you just need to see it in writing?" (Tr. 506.)  The ALJ responded he only wanted to see the results as they would speak for themselves (Tr. 506).

It would appear to the undersigned, that if given an opportunity the Plaintiff would have been in a position to describe the test to which she was referring, which could have confirmed whether or not the actual evaluation was a FCE within the meaning applied by the SSA for disability determination.  Given the close proximity in time when Dr. Hussain,

11

who also had very limited contact with Plaintiff during her course of treatment with the Institute of Pain Management, completed the Certification of Health Care Provider for the Department of the Navy regarding Plaintiff's requested medical disability retirement, and the reference in follow-up notes to a functional capacity evaluation, the Court is unclear if a formal FCE was done with this Plaintiff, or if the Certification of Health Care Provider might be the"functional capacity evaluation" to which Dr. Hussain refers in his July 3, 2003 office note and which Plaintiff recalled during her testimony.

Plaintiff's counsel wrote the ALJ after the administrative hearing, stating he had made every effort to locate a FCE report and none was to be found (Tr. 92).  The attorney further states that after having spoken at length with his client, she did not remember undergoing a functional capacity evaluation, apparently as it was described by the attorney to Plaintiff.  One is left to wonder if there was one evaluation completed, but identified by differing names, or if a formal FCE was completed and the results not filed in the record. Either way, such ambiguity is an insufficient basis to rely upon when making a credibility determination that is key to the overall disability decision.

### The ALJ's Consideration of Treating Source Statements

The ALJ also found "[n]one of the claimant's doctors have ever indicated that she was completely disabled.  Even Dr. George only restricted her from repetitive use activities with her left arm."  (Tr. 17.)  The ALJ used his agreement with this "assessment" of Plaintiff's condition by Dr. George to support his finding that Plaintiff was not precluded from a "restricted range of sedentary and light work. . ." (Tr. 17).  However, the ALJ's reference to Dr. George's opinion (Exhibit 16F/30) has isolated certain aspects of the opinion, while ignoring other statements which are contrary to the ALJ's finding (*see* Tr. 433-34).

12

Selectively reliance on only a limited part of the record, while ignoring other parts, is not permitted. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

On January 28, 2004, Dr. George wrote a letter detailing his professional assessment of Plaintiff's condition (Tr. 433-34).[7]  This letter was in follow-up to Dr. George's work excuse note dated October 29, 2003, wherein he stated that Plaintiff would be unable to perform her usual duties as a secretary and her condition would be likely to deteriorate over time, not improve (Tr. 433, 241).  Contrary to the ALJ's finding, Dr. George does not only restrict Plaintiff from repetitive use activities with her left arm.  Dr. George stated that Plaintiff's position as a facilities management clerk involved repetitive motion and overuse of both upper extremities, that lead to overutilization of the affected extremity and are likely to increase the deterioration of the condition (Tr. 433).  Dr. George went to state the overuse leads to increased pain and decreased functional ability of the extremity and may also lead to spread of the disease to other extremities (Tr. 433).  He also noted that working with only the unaffected arm was not a realistic option (Tr. 434).  Dr. George also found Plaintiff was "already incapacitated to such a degree that it is difficult to do even simple tasks, such as activities of daily living, let alone the burden of a position requiring fine motor dexterity on a daily basis" (Tr. 434).  Dr. George found Plaintiff's condition represents a "classic case of RSD, and it would be reasonable to expect her to continue in the pathologic process of RSD" (Tr. 242).

---

[7]The Court notes this letter was written to Mr. Harvey Friedman, Esq., a private attorney in Washington, D.C., specializing in the representation of federal government employees seeking Office of Personnel Management disability retirement.  *See* http://www.disabilityretirement.com/legalhelp.asp (last visited March 30, 2008).  On October 14, 2003, Dr. George drafted a similar letter to the Office of Personnel Management (*see* Tr. 242).

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).   If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ must consider all medical opinion evidence and weigh it taking into account the nature and extent of the relationship between the claimant and the medical source.   20 C.F.R. § 404.1527(d).   Generally, an ALJ is required to give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not.  20 C.F.R. § 404.1527(d)(1).  The ALJ may consider a physician's medical specialty and decide to give more weight to the opinions of physicians in their areas of medical expertise and specialty.  20 C.F.R. § 404.1527(d)(5).

While the ALJ may discredit the medical opinions of treating and examining physicians, he is required to state specific reasons for doing so, particularly with regards to the treating physicians' opinions.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Although the special deference afforded the statements and/or opinions of treating physicians is not applicable to opinions arising out of a single consultative examination, all medical opinions must be considered in making a disability determination under the Social Security Act.  See *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.").

The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists to discount a treating physician's opinion when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The ALJ stated he concurred with the assessment of Dr. George, but it is apparent to the undersigned that the ALJ misconstrued the opinion of Dr. George in such a fashion as to identify a limited aspect with which he could agree. The ALJ's finding in this regard is not supported by substantial evidence.

<u>Miscellaneous Errors</u>

In addition to the errors noted above, the Court finds the ALJ either misstated or misconstrued the record on several points. While the Court will not attempt to discuss each and every erroneous finding, the more notable errors are hereby brought to the attention of the Commissioner.

Of first note, the Court finds the ALJ did not address all of Plaintiff's claimed severe impairments. As stated above, the ALJ found Plaintiff's severe impairments were her history of RSDS[8], her history of left shoulder pain due to impingement syndrome and adhesive capsulitis, her history of cervical spine degenerative disc disease with HNP at C-5/C-7, radiculopathy at C-5/C-6, and her history of pain disorder (Tr. 13). Thus, the ALJ addressed those severe impairments. The ALJ also addressed Plaintiff's depression, claimed as a severe impairment, during the course of the administrative hearing (Tr. 506-07) and then found through her testimony that Plaintiff's psychiatric based problems had

---

[8]Also frequently abbreviated as "RSD."

not deprived her of the ability to work and was therefore not severe (Tr. 15).

However, the ALJ did not address Plaintiff's limitations arising from the side effects of her numerous medications.[9]   Under precedent in this circuit, the Court finds Plaintiff made the requisite showing that the side effects of her medications were a severe impairment that could be expected, and did, interfere with her ability to work. *See McDaniel v. Bowen*, 800 F. 1026, 1031 (11th Cir. 1986). A claimant need show only that her impairment is not so slight and its effect not so minimal. *Id.*

During the hearing, Plaintiff stated she had problems cause by her medications (Tr. 498, 503, 511).  The ALJ questioned whether Plaintiff had ever told any of the doctors about any side effects of the medication, and Plaintiff responded that she had (Tr. 511). The ALJ remarked, incorrectly, that the doctors had not written any such information down in their records (Tr. 512).  The ALJ does not refer to Plaintiff's numerous medications and her asserted side effects in the decision to deny Plaintiff's application for disability benefits. Review of the record demonstrates Plaintiff complained of medication side effects as severe impairments when filing for disability benefits (Tr. 109-110, 136, 191).  Plaintiff asserted it was hard for her to concentrate because of the medications and the pain (Tr. 110).  She also claimed she took strong medication that left her disoriented, tired and hurt and she could not operate like a healthy person (Tr. 136).   Plaintiff's doctors and her employer noted how the medications affected her performance (Tr. 196-97–"she appeared confused,"  "co-workers began to notice the confusion as well;" Tr. 214–"pt speaks sluggishly-slow;" Tr. 268–"overdosing on pain medication," "she is now taking 40 mg of

---

[9]Plaintiff's medications are listed at various points throughout the record. *See, e.g.*, Tr. 203-04.

Oxycotin twice a day, Percocet 5/325 mg 3 to 4 time a day, Neurontin 300 mg 3 times a day and Zanaflex 4 mg 3 times a day" (plus her other medications), "she has problems with slurring of speech, dizziness and tiredness;" Tr. 272–"patient is having significant cognitive dysfunction....I will reduce Neurontin to 300 mg at bedtime," "patient is on high dose opiods...I will discontinue the p.o. form[10] and trial her on Duragesic patch[11] 50mcg/hr to apply patch every 72 hours;" Tr. 399-400–patient had reaction of "positive Horner syndrome[12] immediately afterward" two of the series of three left stellate ganglion blocks). Perhaps most telling is the letter from Plaintiff's boss noting Plaintiff's confusion at work after during the time she was taking pain medication (Tr. 196-97).

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. 404.1529.   The Court is unable to ascertain whether the ALJ gave consideration to

---

[10]P.O. is an abbreviation used in medical lexicon to denote "by mouth, orally." *The Online Medical Dictionary*, at http://www.medilexicon.com/medicalabbreviations.php (last visited March 30, 2008).

[11]Duragesic Patch-Duragesic patches deliver a continuous dose of the potent narcotic painkiller fentanyl for a period of three days. The patches are prescribed for chronic pain when short-acting narcotics and other types of painkillers fail to provide relief. *See Drug Information Online* at http://www.drugs.com/pdr/duragesic.html (last visited March 31, 2008).

[12]Horner Syndrome-A complex of abnormal findings, namely sinking in of one eyeball, ipsilateral ptosis (drooping of the upper eyelid on the same side) and miosis (constriction of the pupil of that eye) together with anhidosis (lack of sweating) and flushing of the affected side of the face. Due to paralysis of certain nerves (specifically, the cervical sympathetic nerves). *See The Online Medical Dictionary*, at http://www.medilexicon.com/searches/medterms.php (last visited March 28, 2008).

Plaintiff's medication side effects, other than his erroneous finding made at the hearing. Under *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) and *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), the ALJ must consider the side effects of Plaintiff's medications when evaluating Plaintiff's residual functional capacity. Consideration is particularly warranted when, as here, the plaintiff complains of medication side effects and the medical sources also note the possible effects. *Id.*

The ALJ found the evidence of record did not indicate the Plaintiff's RSD had spread to other parts of her body (Tr. 16). This finding is in error. Evidence in the record demonstrates swelling and pain in Plaintiff's left arm, hand and knuckles, her right hand and foot, shooting pain in her legs (Tr. 278-80, 283-84, 304-12, 429-30, 432, 508), which is indicative of RSD spread. The swelling and the burning pain (changes in skin temperature) are clinically documented signs. *See* SSR 03-2p, 2003 WL 22399117, *1, *4 (SSA 2003).

The ALJ found Plaintiff had "undergone no treatment for neck pain and the record reflects no real ongoing complaints of neck pain" (Tr. 17). Given the ALJ found Plaintiff's cervical radiculopathy was a severe impairment, the Court finds the referenced statement is wholly incredible.

In evaluating Plaintiff's impairments or combination of impairments at Step Three, the ALJ held it was "not necessary for the Commissioner to produce conflicting evidence" to refute Plaintiff's claims, as Plaintiff had failed to meet her burden of production and it was not apparent of the face of the record that Plaintiff 's condition was disabling *per se* (Tr. 13). The Court is somewhat confused by such a statement, when the administrative proceedings before an ALJ of the Social Security Commission are not adversarial in nature.

18

*See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000), *citing Richardson v. Perales*, 402 U.S. 389, 400-01 (1971) (Social Security hearings are inquisitorial rather than adversarial; the ALJ has the duty to investigate the facts and develop the arguments both for and against granting benefits).  It appears the ALJ in this case rubber stamped a finding at Step Three because Plaintiff failed to advance argument that her condition met or equaled the criteria for any of the impairments stated in listed in Appendix 1 of 20 C.F.R. part 404, subpart P.  At this step in the sequential evaluation, it is the responsibility of the Plaintiff to produce evidence of her disabling condition and it is the responsibility of the ALJ to compare and weigh that evidence against the Listing of Impairments found in Appendix 1.  The ALJ does not attempt to "refute" a plaintiff's claims, he is the finder of fact responsible for full and fair development of the record, whether or not the claimant is represented by legal counsel.  *See Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court also takes note that the ALJ makes no mention in his decision of the approval given to Plaintiff's application for disability retirement by the United States Office of Personnel Management (Tr. 45-47).  While the Regulations are clear that a disability determination by another agency is not binding on the SSA, the law of this circuit is equally clear such decisions are entitled to consideration and great weight.  *Compare* 20 C.F.R. § 1504 (stating that a decision by any nongovernmental or other governmental agency about disability is not binding on the SSA) *with Bloodsworth v. Heckler*, 703 F.2d at 1241 (holding the disability findings of another agency, in this case the Florida State Retirement Division, were entitled to great weight); *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir.

1984) (finding Florida's workers compensation statute construed the term disability in like manner with the SSA's interpretation of the term and the workers compensation finding as to disability was due great weight); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (finding the disability rating of the plaintiff by the Veterans Administration was entitled to great weight). On the facts of this case, consideration of Plaintiff's disability retirement from the Dept. of the Navy is warranted.

## IV. Conclusion

The Court is precluded from reweighing the evidence anew, but it is nonetheless obligated to review the record in its entirety. *Foote*, 67 F.3d at 560. The Court's independent review reveals the record differs from the ALJ's factual findings in the above-mentioned instances. Thus, it is impossible to say the ALJ's decision is supported by substantial evidence. In *Baker v. Barnhart*, Case No. 03-C-2291, 2004 WL 2032316, N.D. Ill. Sept. 9, 2004, the court ordered the case be remanded to the Commissioner where the ALJ had misstated the record and failed to address the physical limitations found by the plaintiff's treating physician. The Court finds that opinion to be persuasive, given the facts of this case.

While each of the aforementioned misstatements and/or mis-characterizations of the record when viewed individually may not constitute such error as to require reversal, the numerous misstatements mentioned above, taken as a whole, reveal an inaccurate review of the record and inadequate support in the record.

An ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Baker*, 2004 WL 2032316, at *8. The ALJ must also "sufficiently articulate" his

assessment of the evidence to assure the court that he has considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his conclusion. *Id.* After review of the ALJ's decision and the administrative record, the Court cannot find the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion.

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED** for additional proceedings consistent with this Order and Opinion.

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; consideration of the opinions of Plaintiff's examining and treating medical sources; consideration of the opinions of non-examining medical sources; re-evaluation of Plaintiff's subjective complaints of pain; and, if warranted, additional vocational expert testimony. In accordance with the precedent in this circuit, Plaintiff's subjective complaints of pain are now accepted as true as a matter of law. *Foote v. Chater*, 67 F.3d at 1561-62.

Furthermore, the ALJ shall accord proper weight to the testimony and statements of Plaintiff's treating physicians in accordance with the law of this circuit. *See Lewis,* 125 F.3d at 1440-41*; Sharfarz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987). If the ALJ finds reason to disregard the opinion of a treating or examining physician, he must provide specific reasons for doing so, and these reasons must be supported by substantial

evidence in the record.  In accordance with the precedent in this circuit, the medical opinions of Dr. Dennis George are now accepted as true as a matter of law.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ shall weigh the evidence in light of the findings expressed herein.

### V. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2008.

Thomas E. Morris

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to counsel of record